UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL W. H.[1], | ) | NO. CV 23-07258-KS |
| Plaintiff, | ) | |
| | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MARTIN J. O'MALLEY[2], | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Michael W. H. ("Plaintiff") filed a Complaint seeking review of the denial of his applications for a period of disability, disability insurance benefits, and supplemental security income. (Dkt. No. 1.) On November 3, 2023, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned Chief United States Magistrate Judge. (Dkt. No. 9.)

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Martin J. O'Malley became the Commissioner of Social Security on December 20, 2023. Therefore, pursuant to Federal Rule of Civil Procedure Rule 25(d), Martin J. O'Malley should be substituted for his predecessor(s) as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

On November 6, 2023, Defendant Commissioner filed an Answer to the Complaint and lodged the Certified Administrative Record ("AR"). (Dkt. No. 10.) On March 21, 2024, Plaintiff filed a Motion for Summary Judgment, which the Court construes as Plaintiff's Brief (dkt. no. 15). See Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) ("Suppl. Rules"), Rule 5 ("The action is presented for decision by the parties' briefs."); Rule 6 ("The plaintiff must file and serve on the Commissioner a brief for the requested relief within 30 days after the answer is filed . . . ."). On May 22, 2024, Defendant filed the Commissioner's Brief (dkt. no. 18). Suppl. Rule 7. Plaintiff did not file an optional reply. Suppl. Rule 8.

Plaintiff seeks an order vacating the Administrative Law Judge's decision and remanding the matter for further administrative proceedings "including a new hearing and decision." (Dkt. No. 15 at 19.) The Commissioner seeks an order affirming the Administrative Law Judge's decision or, in the alternative, remanding this case to the Commissioner for further proceedings. (Dkt. No. 18 at 9.) The Court has taken the matter under submission without oral argument.

For the reasons outlined below, the decision of the Commissioner is AFFIRMED.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

In February 2021, Plaintiff who was born on March 22, 1963, filed applications for a period of disability, disability insurance benefits, and for supplemental security income, alleging disability since March 2, 2020, based upon the following conditions: "Heart Problem; High Blood Pressure; Headaches; Brain Injury." (AR 54, 234, 244, 246, 250, 255, 303.) Plaintiff's applications were initially denied on October 22, 2021, and were denied upon reconsideration on January 10, 2022. (AR 53, 67-68, 69, 83-87, 101-03, 117-20.)

Plaintiff requested a hearing (AR 143-45), and on June 17, 2022, Administrative Law Judge Michael Radensky (the "ALJ") held a telephonic hearing in which Plaintiff, represented by counsel, testified, as did Scott Nielson, a vocational expert. (AR 32-52.) On July 27, 2022, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability from March 2, 2020 through the date of the ALJ's decision. (AR 26.) The Appeals Council denied Plaintiff's request for review on July 10, 2023. (AR 1-3.) Plaintiff subsequently filed this timely civil action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2024. (AR 18.) The ALJ also found that Plaintiff had not engaged in substantial gainful activity since March 2, 2020, the alleged onset date. (*Id.*) Additionally, the ALJ found that Plaintiff had the following severe medical impairments: coronary artery disease, diabetes mellitus, and hypertension. (*Id.*) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the Code of Federal Regulations. (AR 20.)

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: "occasional postural activities, but no climbing no ladders [sic], ropes, or scaffolds; avoid concentrated exposure to extremes of temperature or pulmonary irritants; no exposure to unprotected heights." (*Id.*) The ALJ further determined that Plaintiff could perform his past relevant work as a security guard. (AR 25-26.) Accordingly, the ALJ concluded that Plaintiff had not been under a disability from March 2, 2020, through the date of the decision. (AR 26.)

\\
\\
\\

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Ahearn v. Saul*, 988 F.3d 1111, 1115-16 (9th Cir. 2021); *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2010) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "Even when the evidence is susceptible to more than one rational interpretation, [courts] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds*.

Although this Court cannot substitute its judgment for the Commissioner's, the Court nonetheless "must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion." *Ahearn*, 988 F.3d at 1115; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Ahearn*, 988 F.3d at 1115 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The Court must uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Ahearn*, 988 F.3d at 1115-16; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may only review the reasons asserted by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Lastly, the Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate

nondisability determination, or [if], despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation omitted).

## DISCUSSION

Plaintiff claims that the ALJ's RFC determination was not supported by substantial evidence in two respects: (1) the ALJ improperly evaluated the medical opinion of Geetha Gabbita, M.D.; and (2) the ALJ failed to account for limitations the ALJ himself assessed. (Dkt. No. 15 at 4, 8-19.)

I. **Relevant Facts**

a. **Medical Opinion Evidence**

On July 3, 2021, Dr. Luis E. Lucero, a consultative examining psychologist, completed a summary report of Plaintiff's psychological evaluation. (AR 354-59.) In the report, Dr. Lucero noted that Plaintiff's "[p]osture and gait are unremarkable." (AR 355.) He also stated that Plaintiff had the ability "to understand, remember and carry out simple instructions" but had a "mild impairment" with complex instructions. (AR 355.) Dr. Lucero found that Plaintiff's medical record indicated minimal evidence of mental health treatment and determined that Plaintiff's attitude and behavior had "no apparent abnormalities." (AR 356.) Plaintiff reported that his daily activities included "watching TV, reading, walking and going to AA meetings." (AR 356.) Plaintiff also reported he did not need assistance with "dressing, bathing, making meals, doing some house chores, [sic] shopping… [or using] public transportation independently." (AR 356.) Thus, Dr. Lucero concluded that Plaintiff "would be able to interact appropriately with supervisors, co-workers and the public on a consistent basis" and that Plaintiff "would have no significant difficulty to respond appropriately to usual work situations and changes in a routine work setting." (AR 356.)

On July 28, 2021, Joshua J. Boyd, Psy.D., a state agency medical consultant, determined that Plaintiff had hypertension and hyperlipidemia that were non-severe. (AR 59.) Additionally, Dr. Boyd determined that Plaintiff had anxiety and obsessive-compulsive disorders that were severe. (AR 59.) Dr. Boyd determined that Plaintiff had moderate limitations in the ability to understand, remember or apply information and to concentrate, persist, or maintain pace. (AR 60.)

On August 24, 2021, a consultative examining physician, Jay Dhiman, M.D., determined that Plaintiff had atypical chest pain, unlikely ischemia due to occurrence only every two weeks; hypertension; and hyperlipidemia. (AR 364.) Dr. Dhiman concluded that Plaintiff could perform light work such as: lifting and carrying twenty pounds occasionally and ten pounds frequently, standing and walking six hours in an eight-hour day, reaching overhead and performing manipulations without limitations, bending, balancing, crouching, and stooping frequently. (AR 364-65.)

On October 21, 2021, A. Resnik, M.D., a state agency medical consultant, completed a medical evaluation of Plaintiff and determined that his medical impairments, atypical chest pain; hypertension; and hyperlipidemia, were non-severe and did not show "any objective findings that support any functional limitations." (AR 58-59.) On December 23, 2021, N. Amini, M.D., a state agency medical consultant, reaffirmed Dr. Resnik's assessments. (AR 108-09.)

On January 3, 2022, L. Colsky M.D., a state agency medical consultant, affirmed that Plaintiff's hypertension and hyperlipidemia were non-severe, but his anxiety and obsessive-compulsive disorders were severe. (AR 59.) Dr. Colsky determined that Plaintiff had moderate limitations in the ability to understand, remember or apply information and to concentrate, persist, or maintain pace. (AR 60.)

On February 10, 2022, Dr. Geetha V. Gabbita, M.D., Plaintiff's primary care physician, prescribed Plaintiff a walker during a follow-up appointment for his alleged "tingling in both legs." (AR 393.) On March 10, 2022, Dr. Gabbita completed a physical assessment of Plaintiff and determined that he had significant limitations. Dr. Gabbita concluded that Plaintiff would need to miss work more than four times per month; could not stand or walk for more than one hour in an eight-hour workday; could not sit for more than three hours in an eight-hour workday; would need to take three-to-four ten–to-fifteen-minute breaks; and could only occasionally lift ten pounds. (AR 381-82.)

### b. The ALJ's Decision

In making his RFC findings, the ALJ referenced the medical records outlined above. Although the ALJ determined that Plaintiff has three severe impairments: coronary artery disease, diabetes mellitus, and hypertension, the ALJ nevertheless concluded that Plaintiff had the RFC to perform light work in part based on the limitations outlined in the medical opinion evidence. (AR 18-20.) Specifically, the ALJ concluded that Dr. Dhiman's and Dr. Lucero's assessments were persuasive while the other doctors' assessments, including Dr. Gabbita's, were unpersuasive. (AR 20-25.)

In finding Dr. Boyd's, Dr. Resnik's, Dr. Amini's, and Dr. Gabbita's medical opinions unpersuasive, the ALJ stated that these opinions were "poorly supported and inconsistent with the medical record." (AR 24-25.) The ALJ also reasoned that the medical record demonstrated "minimal evidence of persistent symptoms, mental status abnormalities, or ongoing mental health treatment" for Plaintiff's anxiety and obsessive-compulsive orders. (AR 24.) The ALJ concluded that "Dr. Gabbita did not provide a detailed explanation regarding the assessed functional limitations or references to any objective medical evidence." (AR 25.) The ALJ also discussed how the "medical record demonstrates normal gait," the absence of evidence for

Plaintiff's alleged neuropathy, and the Plaintiff's denial of neuropathy at follow-up doctor visits. (AR 22, 25.) The ALJ also determined that Plaintiff has a "greater functional capacity than as alleged" based on the Plaintiff's ability to perform "significant activities of daily living." (AR 25.)

Lastly, the ALJ concluded that based on Plaintiff's RFC and the vocational expert's testimony, Plaintiff could perform his past relevant work as a security guard. (AR 26.)

## II.   The ALJ Properly Evaluated the Medical Opinions

### a.   Legal Standard

The ALJ does not "defer or give any specific evidentiary weight" to a claimant's medical sources. 20 C.F.R. § 416.920c(a). The ALJ must evaluate the persuasiveness of medical opinions and physician's findings based on the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 416.920c(c). However, the most important factors to consider are supportability and consistency. 20 C.F.R. § 416.920c(a). The ALJ determines supportability based on how well the relevant "objective medical evidence" supports the "medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(c)(1). The ALJ determines consistency based on how similar "medical opinion(s) or prior administrative medical finding(s) [are] with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2). In compliance with the revised regulations, an ALJ cannot reject a medical opinion "as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); 20 C.F.R. § 416.920c(c)(b)(2).

\\

### b. Analysis

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because he improperly evaluated the medical opinion of Dr. Gabbita. (Dkt. No. 15 at 11-16.) Plaintiff contends that Dr. Gabbita's evaluation contained enough specificity to support her findings and that the ALJ relied upon "cherry-picked evidence" in rejecting it that did not accurately reflect the medical record. (*Id.* at 14-16.) Plaintiff contends that if Dr. Gabbita's opinion was properly credited, Plaintiff would have been unable to perform his past work as a security guard. (*Id.* At 16.) Defendant argues that the ALJ's rejection of the limitations assessed by Dr. Gabbita was well supported by objective medical evidence and not erroneous. (Dkt. No. 18 at 3-7.)

The Court finds that the ALJ provided an adequate explanation supported by substantial evidence for his conclusion. *Woods*, 32 F.4th at 792. Here, the ALJ evaluated Dr. Gabbita's medical opinion and concluded that it was unpersuasive because it was "poorly supported and inconsistent with the medical record." *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *see also Kahoonei v. Saul*, 856 F. App'x 691, 694 (9th Cir. 2021) (holding the ALJ properly discounted physician's opinion because it was "inconsistent with objective findings in the medical record, which indicated normal sensation in [plaintiff's] extremities and normal gait and balance"). The ALJ also considered Dr. Gabbita's medical questionnaire, which included conclusions that Plaintiff was limited in his ability to stand, walk, and lift weight throughout his workday, and found it to be unpersuasive because it did not provide a "detailed explanation regarding the assessed functional limitations or references to any objective medical evidence." (AR 25.) The ALJ discussed the medical record in detail, which indicated that Plaintiff had a "normal gait," did not require the assistance of a walker, and was only prescribed one at Plaintiff's request. (*Id.*) The ALJ also discussed the absence of objective medical evidence for neuropathy, and the

"significant activities of daily living" that Plaintiff was able to perform. (AR 24-25.) The ALJ ultimately found Dr. Gabbita's opinion to be merely a compilation of checklists and conclusory statements of diagnoses with an insufficient explanation as to how the doctor reached those conclusions. (AR 25, 381-82.)

Conversely, in finding the opinions of Dr. Dhiman and Dr. Lucero to be persuasive, the ALJ concluded that they were consistent with clinical findings, consistent with Plaintiff's ability to perform "significant activities of daily living," and "well supported and generally consistent" with the objective medical record. (AR 23-24.)

Substantial evidence supports the ALJ's conclusion that Dr. Gabbita's opinion was unpersuasive, as well as the ALJ's RFC finding. *Woods*, 32 F.4th at 792.

### III. The ALJ Properly Accounted for the Limitations in his RFC Determination

#### a. Legal Standard

The Social Security Administration ("SSA") assesses a plaintiff's RFC "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). If a claimant has multiple impairments, the SSA "will consider all of [the claimant's severe and non-severe] medically determinable impairments . . . when [assessing the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(2); *see also* 20 C.F.R. § 404.1545(e). Additionally, the SSA considers "the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523(c).

However, while an ALJ must "consider" the factors set forth above, that "does not necessarily require the inclusion of every impairment into the final RFC if the record indicates

the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work." *See Medlock v. Colvin*, No. CV 15-9609-KK, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016); *see also Burch*, 400 F.3d at 684; *see also Sisco v. Colvin*, No. 13-CV-01817-LHK, 2014 WL 2859187, at *8 (N.D. Cal. June 20, 2014) (holding the ALJ was not required to include a mental limitation in the hypothetical given to the vocational expert because substantial evidence illustrated the plaintiff's mental impairment did not pose any significant functional limitations).

### b. Analysis

Plaintiff contends that the ALJ failed to account for nonexertional limitations related to Plaintiff's mental impairments in the RFC. (Dkt. No. 15 at 16-19.) Plaintiff argues that the ALJ must consider the combined effect of all the claimant's impairments on his ability to function and thus erred by failing to provide limitations in the RFC related to Plaintiff's non-severe mental conditions. (*Id.*) Plaintiff also contends that the ALJ's error was harmful because the hypothetical question used to make the Step 4 determination did not include any limitations in the paragraph B criteria. (*Id.* at 18-19.)

Defendant argues that the ALJ's RFC findings are supported by substantial evidence, and that there is "no evidence that Plaintiff had significant mental health treatment." (Dkt. No. 18 at 7-9.) Defendant further contends that the ALJ was not required to incorporate mental limitations in the RFC where, as here, the ALJ "found that Plaintiff had no more than mild limitations in rating the severity of Plaintiff's mental impairment." (*Id.* at 8.)

The ALJ determined that Plaintiff suffered from mild impairments in "understanding, remembering, and carrying-out complex instructions," but did not expressly incorporate additional limitations into Plaintiff's RFC based on those impairments. (AR 23.) The Court finds that substantial evidence supports the ALJ's decision.

"The burden of proof is on the claimant at steps one through four," meaning that Plaintiff must put forward evidence to show his mental impairment severely hindered his capacity to work. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (*quoting Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)).  Plaintiff did not present any evidence to show that his mental impairments severely hinder his abilities to work nor does the objective medical record indicate as much. (AR 356-58.) In fact, the objective medical record indicates that despite Plaintiff's mild limitations, he is still able to perform the duties required of a security guard. (AR 358; 364-65.)

The ALJ noted Dr. Lucero's medical opinion in which Plaintiff reported that his daily activities included "watching TV, reading, walking and going to AA meetings." (AR 24, 356.) Plaintiff also reported that he did not need assistance with "dressing, bathing, making meals, doing some house chores, [sic] shopping… [or using] public transportation independently." (AR 24, 356.) Dr. Lucero concluded that Plaintiff "would be able to interact appropriately with supervisors, co-workers and the public on a consistent basis" and that Plaintiff "would have no significant difficulty to respond appropriately to usual work situations and changes in a routine work setting." (AR 356.) The ALJ also noted that Dr. Lucero's opinion, in which he concluded that Plaintiff was still able to perform his work duties despite Plaintiff having a "mild impairment in understanding, remembering, and carrying-out complex instructions," to be persuasive. (AR 23.) The ALJ was not, however, required to then make specific findings of functional limitation based on the mild mental limitations assessed. *Medlock*, 2016 WL 6137399 at *5; *Burch*, 400 F.3d at 684; *Sisco*, 2014 WL 2859187 at *8.

The Court finds that Plaintiff has not demonstrated that the ALJ's RFC assessment lacks "a thorough discussion and analysis of the objective medical evidence and other evidence." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing SSR 96-8p). The ALJ was not required to expressly include any limitations in the RFC based on Plaintiff's non-severe mental conditions. *Medlock*, 2016 WL 6137399 at *5; *Burch*, 400 F.3d at 684; *Sisco*, 2014

WL 2859187 at *8. Moreover, even to the extent the evidence here may be "susceptible to more than one rational interpretation," this Court "must uphold the ALJ's findings," as they "are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111. The record here indicates that the ALJ's RFC assessment was free of legal error and based on substantial evidence. *Ahearn*, 988 F.3d at 1115-16; *Orn*, 495 F.3d at 630. No reversal or remand is warranted based on the arguments raised in Plaintiff's Brief.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 9, 2024

_____
HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE